UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER M. JOHNSON, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>DR. VALLE, et al., )<br>)<br>    Defendants. )<br>              )<br>)<br>INDIANA DEPARTMENT OF )<br>CORRECTION )<br>)<br>    Interested Party. ) | No. 1:22-cv-00837-JPH-KMB |

**Order Denying Motion for Preliminary Injunction**

Christopher Johnson, an Indiana Department of Correction (IDOC) inmate, alleges that prison medical staff have been deliberately indifferent to his serious medical needs by failing to provide him with the specific prescription medications that he has demanded. Mr. Johnson has moved for a preliminary injunction, requesting that the Court order the defendants to provide him with those prescription medications—Wellbutrin and Buspar. For the reasons below, Mr. Johnson's motion for preliminary injunction, dkt. [8], is **DENIED**.

## I.  Procedural History

Mr. Johnson's amended complaint names four defendants: (1) Dr. Valle, (2) Dr. William Mays, (3) NP Kokeh, and (4) Centurion Health of Indiana, LLC. He alleges that these defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they refused to

1

provide him with Wellbutrin and Buspar and instead tried to give him other medications that have harsh side effects. Dkt. 9.

Mr. Johnson filed a motion for preliminary injunction with his complaint. The motion seeks an order requiring the defendants to provide him with twice daily Wellbutrin 150 milligrams and twice daily Buspar 30 milligrams. Dkt. 8. The defendants filed a timely response. Dkt. 20. Mr. Johnson sought several extensions of time to file his reply before ultimately providing an oral reply in support of the motion at a telephonic status conference. Dkt. 44.

## II. Factual Background

Mr. Johnson attests that he suffers from chronic kidney disease, neuropathy due to past gunshot wounds, back pain due to a past gunshot wound, a permanent foot injury due to a past gunshot wound, post-traumatic stress disorder, anxiety, and deep depression. Dkt. 8-1 at 1–4. This Order focuses on Mr. Johnson's mental health conditions as they are the subject of his motion for preliminary injunction.

### A. Mr. Johnson's conditions and past treatment

In mid-to-late 2018, Mr. Johnson was incarcerated at the Marion County Jail. Dkt. 20-1 at 4–6. There, a behavioral health practitioner diagnosed him with depressive disorder and generalized anxiety. *Id.* at 4. Mr. Johnson had existing prescriptions for Wellbutrin and Buspar, but he wanted to be taken off Buspar because it was ineffective. *Id.* at 5. The provider increased Mr. Johnson's dosage for both medications. *Id.* at 4–5.

In June 2019, Mr. Johnson was transferred to the IDOC's Regional Diagnostic Center. His transfer paperwork included prescriptions of Wellbutrin and Lexapro for mental health needs. *Id.* at 9–10.

On Mr. Johnson's second day at the Regional Diagnostic Center, a doctor treated Mr. Johnson. *Id.* at 19. She prescribed him Celexa. *Id.* Her notes report that Mr. Johnson "mentioned all the federal lawsuits he has filed, the summary judgments, and what he will do to me if he doesn't get what he wants." *Id.*

In early July 2019, a therapist treated Mr. Johnson. *Id.* at 26. Mr. Johnson asked for Wellbutrin, but the therapist explained that this was not typically prescribed at the prison. *Id.* The therapist referred him to a psychiatrist. *Id.*

In late July 2019, Mr. Johnson was treated by a medical provider for medication review. *Id.* at 28. He again asked for Wellbutrin instead of Celexa. *Id.*

In August 2019, a medical provider treated Mr. Johnson. Dkt. 20-2 at 2. The doctor noted that Mr. Johnson, in addition to demanding specific mental health medications, had been refusing all pain medications other than Gabapentin. *Id.* She prescribed Cymbalta for Mr. Johnson's mental health needs. *Id.* at 4 The next month, the provider discontinued Mr. Johnson's Cymbalta prescription because he refused to take it. *Id.* at 8.

**B.     Defendants' treatment from January 2022 through the Present**

In January 2022, Mr. Johnson was transferred to Pendleton Correctional Facility. He had existing prescriptions for Buspar and Wellbutrin. *Id.* at 10 and 19. Psychiatrist Dr. Valle prescribed Pamelor (Nortriptyline), which is an antidepressant that also treats nerve pain. *Id.*

3

In February 2022, Dr. Valle treated Mr. Johnson for medication management. *Id.* at 19-22. At the visit, Mr. Johnson requested Buspar and Wellbutrin, reporting that several other medications he had tried were either ineffective or produced negative side effects. *Id.* at 19. Dr. Valle noted that Mr. Johnson was also "demanding gabapentin," which raised concerns about drug seeking behavior. *Id.* at 20. Dr. Valle found that Mr. Johnson did not meet the requirements of post-traumatic stress disorder. *Id.* Dr. Valle prescribed Zoloft for depression, and Mr. Johnson agreed to try it. *Id.*

On April 6, 2022, NP Kokeh treated Mr. Johnson for medication management. Mr. Johnson demanded Buspar and Wellbutrin, and he threatened a federal lawsuit if he did not receive them. Dkt. 20-3 at 1. Mr. Johnson reported that Zoloft gave him "sexual side effects and diarrhea." *Id.* at 2. NP Kokeh explained, as Dr. Valle had previously done, that Mr. Johnson would have to reach the highest dose of Zoloft without symptom improvement before providers would submit a non-formulary request for Wellbutrin. *Id.* NP Kokeh ordered an increased dosage of Zoloft up to 100 milligrams. *Id.*

NP Kokeh treated Mr. Johnson again on April 29, 2022. Mr. Johnson again reported that nothing works for him except Wellbutrin. *Id.* at 5. NP Kokeh increased Mr. Johnson's Zoloft prescription to 150 milligrams daily, with a plan to titrate up to 200 milligrams daily in one week. *Id.* at 6.

On June 8, 2022, Mr. Johnson refused Zoloft, reporting that it did not work and caused him harm. *Id.* at 17. Two days later, NP Kokeh treated Mr. Johnson for medication management. Mr. Johnson reported severe bloody

4

diarrhea from Zoloft. *Id.* at 18. NP Kokeh suggested Effexor and Prozac. *Id.* at 19. Mr. Johnson refused Effexor because it "causes his face to twitch and jerk." *Id.* Mr. Johnson refused Prozac, explaining, "I do not want to take Prozac. I want Wellbutrin." *Id.* Mr. Johnson threatened a lawsuit if he did not receive Wellbutrin. *Id.*

On June 27, 2022, NP Kokeh treated Mr. Johnson for medication management. Mr. Johnson reported that he was allergic to all antidepressants other than Wellbutrin. *Id.* at 22.

On February 15, 2023, Mr. Johnson provided an "oral reply" to his motion for preliminary injunction:

> Mr. Johnson asked that the record reflect that the mental health medications he requests in his motion for preliminary injunction have been previously prescribed to him and are the only ones that provide him relief for his mental health issues. He stated that other medications have caused him side effects or allergic reactions, and his requested medications are the only ones that have been prescribed to him that do not cause him these side effects and that help his mental health. He then confirmed that he had nothing else to add in support of his motion.

Dkt. 44 at 2.

### III. Legal Standard

Injunctive relief under Federal Rule of Civil Procedure 65 is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021). To obtain such extraordinary relief, the party seeking the preliminary injunction carries the burden of persuasion by a clear showing. *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Determining whether a preliminary injunction is appropriate under Rule 65 involves a two-step inquiry, with a threshold phase and a balancing phase. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). At the threshold phase, the moving party must show that: (1) without the requested relief, it will suffer irreparable harm during the pendency of its action; (2) traditional legal remedies would be inadequate; and (3) it has "a reasonable likelihood of success on the merits." *Id.* "If the moving party cannot establish . . . these prerequisites, a court's inquiry is over and the injunction must be denied." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

If the movant satisfies the threshold requirements, the Court proceeds to the balancing phase "to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Whitaker*, 858 F.3d at 1044. This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

Because Mr. Johnson is a prisoner, the Prison Litigation Reform Act "circumscribes the scope of the court's authority to enter an injunction." *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

## IV. Discussion

Mr. Johnson has not met the threshold elements for a preliminary injunction.

### A. Likelihood of success on the merits

"A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020). The precise likelihood of success required depends in part on the balance of harms: "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays*, 974 F.3d at 818.

Mr. Johnson has not shown a strong likelihood of success on the merits. "[T]o prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Deliberate indifference requires more than negligence or even objective recklessness. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). Plaintiff "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id.* "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their

7

actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). "[A] jury can infer deliberate indifference when a treatment decision is so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Id.* (cleaned up).

Here, the defendants and other mental health providers regularly consulted with Mr. Johnson and offered a variety of medications to treat his mental health conditions. Mr. Johnson insists that Wellbutrin and Buspar are the only medications that work for him. But "an inmate is not entitled to demand specific care, and medical professionals may choose from a range of acceptable courses based on prevailing standards in the field." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019). Mr. Johnson refuses to even try Prozac because he insists on receiving Wellbutrin. Dkt. 20-3 at 19 ("I do not want to take Prozac, I want Wellbutrin."). He has presented no evidence that Prozac would be ineffective or that prescribing it would be outside the range of acceptable professional judgment.

Moreover, while it appears that Mr. Johnson has received prescriptions for Wellbutrin and Buspar in the past, dkt. 20-1 at 5, 9–10, 19, that does not establish those medications are the only constitutionally adequate treatment for his mental health needs. *See e.g., Gallo v. Sood*, 651 Fed. App'x 529, 533 (7th Cir. 2016) ("Gallo seems to assume that Dr. Sood should have inferred or concluded from his past treatment that Asacol was the only proper treatment, but he did not present any evidence calling into question the appropriateness of the medications" prescribed by defendant.).

8

He therefore has not shown a likelihood of proving that the defendants were deliberately indifferent. *See Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("We routinely have rejected claims [. . .] where a prisoner's claim is based on a preference for one medication over another unless there is evidence of a *substantial* departure from acceptable professional judgment.").

### B.   Irreparable harm and inadequacy of other remedies

For similar reasons, Mr. Johnson has not made the required showings of irreparable harm or inadequacy of legal remedies. Aside from his own lay opinion, Mr. Johnson has not put forth evidence that Wellbutrin and Buspar are required to treat his mental health conditions in a constitutionally acceptable manner. Thus, he has not shown that judicial intervention in his medical treatment is required to prevent irreparable harm or that any other form of relief would be inadequate.

### V.   Conclusion

For these reasons, Mr. Johnson's motion for preliminary injunction, dkt. [8], is **DENIED**.

**SO ORDERED.**

Date: 3/23/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

CHRISTOPHER MICHAEL JOHNSON
270993
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391